Judge Madeleine M. Landrieu
_JjS.IL appeals the juvenile court’s denial of her motion to correct the central registry maintained by the Department of Children and Family Services (“the Department”). For the reasons that follow, we reverse.
FACTS AND PROCEEDINGS BELOW
Article 616 of the Louisiana Children’s Code provides that the Department “shall maintain a central registry of all reports of abuse and neglect.” In February, 2016, the Department received a “referral” concerning S.K., a teacher at a day care facility. A subsequent investigation conducted by the Department validated a finding of “sexual exploitation, pornography” against S.K. This finding was based upon the Department learning that S.K. had taken a cell phone photograph of a four-year-old male student while he was masturbating under a blanket at nap time, and had texted the photograph to her co-teacher, who was in the teacher’s lounge on a break. S.K. acknowledged having taken the photograph but explained that she took it and sent it to her co-teacher seeking direction from her co-teacher as to how Uto handle the situation. S.K. further explained that it was impossible to tell what the child was doing from looking at the photograph.
Following an investigation by the Department, the validated finding of “sexual exploitation, pornography” against S.K. was recorded in the Department’s central registry.[1] Objecting to that finding, S.K. filed a motion to correct the registry in juvenile court pursuant to Louisiana Children’s Code article 616.1, which provides, in pertinent part:
A. When a report alleging abuse or neglect is recorded as justified by the department in the central registry but when no petition is subsequently filed alleging that the child is in need of care, the individual who is the subject of the finding may file a written motion seeking correction of that entry and all related department records in the court exercising juvenile jurisdiction in the parish in which the finding was made.
B. Prior to the hearing, the motion shall be served on the department and the district attorney.
C. If neither the department nor the district attorney files a written objection, the court may enter an order in accordance with Paragraph
D. If after a contradictory hearing with the department and the district attorney the court finds that the report was not justified, in accordance with Article 615(B)(4) or (5), and correction of the record is not contrary to the best interest of the child, it may order the department to correct the central registry entry. If the central registry entry is ordered to be corrected, the department and any law enforcement offices having any record of the report shall be ordered to correct those records and any other records, notations, or references thereto, and the court shall order the department and other custodians of such records to file a sworn affidavit to the effect that their records have been corrected. The affidavit of the department shall also attest to the correction of the central registry entry.
The juvenile court heard the motion on August 4, 2016, and denied it from the bench, signing a written judgment to that effect the same day. S.K. filed both the instant appeal and a writ application challenging the ' trial court’s ruling, which *1171 1 shave been consolidated in this court. As the ruling is a final judgment, we have appellate jurisdiction. See La. Ch. C. art. 330.
ISSUE
S.K. argues that the juvenile court erred by finding that the photograph at issue constituted pornography and/or that her conduct constituted exploitation of the child in question.
DISCUSSION OF THE EVIDENCE
The only two witnesses to testify at the hearing were S.K. and child welfare specialist, Alesia -Allen, who investigated the matter for the Department.
S. K. testified that she had been teaching in the early childhood area for sixteen years, and had been at this particular day care center for seven years. She admitted that she had taken a photograph of her student while he was masturbating under a blanket during nap time. She knew what the child was doing because of the sounds he was making and the movement of his hands, although she stated it would have been as impossible to tell what the child was doing from looking at the photograph itself. Only the child’s head was visible in the photograph; the blanket was pulled up to his neck. This particular child had exhibited this same behavior before. S.K. previously had discussed this behavior with the director of the day care center, as well as with her co-teacher, and the child’s parents. S.K. testified that the policy of the daycare center was for the teacher to allow the child to finish the behavior, not to embarrass the child, and to be discrete.
S.K. testified that her class was composed of eighteen children, ranging in age from three and one-half years to five years old, all of whom slept close | .(together on the floor during nap time. On the day in question, for the first time, the child began making grunting sounds, which attracted the attention of three little girls who were on the floor near him. The three little girls, who were awake and “interested,” were whispering and looking to S.K for guidance. S.K. testified that she took the picture because “it showed the proximity of the kids who were awake next to him.” She sent the picture to her co-teacher, B.L., with a text saying “What should I do now he’s making noises?”[2] Because S.K. never received a response to her text, she handled the situation by turning on the lights and ending nap time earlier than usual.
S.K. testified that the sole reason she sent the, picture was to get direction as to what to do. S.K. testified that she did not expect anyone other than B.L. and perhaps the director to see the picture, and she did not show it or send it to anyone other than B.L. She had never imitated the noises the child was making or mocked him to other teachers. She believed that B.L. had shown the picture to other teachers, who had then “discussed it with everyone.” After the incident, the director called S.K. to her office, told her she should not have taken the picture, "and asked her to delete it, which S.K. did.
Ms. Allen testified that her job was to investigate allegations of child abuse and neglect. Although during her testimony Ms. Allen was questioned about, and periodically referred to, various forms and documents in the Department’s file, 1 Bsuch as the initial referral and the Department’s final report, none of these documents were introduced into evidence, and therefore are not part of the record on appeal.[3]
*1172 According to Ms. Allen, the Department’s investigation was prompted by a written referral initiated by A.U., another teacher at the day care facility. During the investigation, Ms. Allen interviewed S.K., B.L., A.U., C.M. (another teacher), and the director of the day care center. Ms. Allen testified that the referral had mentioned a photograph and a video, but she determined through her investigation that there was never a video.[4] As for the photograph, Ms. Allen testified that she never saw it because it had been deleted by the time of her investigation. S.K. never denied taking the photograph. S.K. offered her phone to Ms. Allen, and Ms. Allen had the police attempt to recover the photograph, but the attempt was unsuccessful.
Ms. Allen said that A.U. had also made allegations that S.K. had mocked the child in front of her and C.M. by imitating the noises made by the child, but C.M. had denied any knowledge of this happening.[5] Ms. Allen had no information to confirm that S.K. had shown or sent the photograph in question to anyone other than her co-teacher, or that S.K. had asked her co-teacher to do so. Ms. Allen had no information that S.K’s motive in taking or sending the photograph was anything other than to seek direction. She had no information indicating that the child’s parents were unsatisfied with the manner in which S.K. had handled the situation. The director of the day care center confirmed to Ms. Allen that she had tasked S.K. to delete the photograph but had not taken any disciplinary action against S.K. Ms. Allen testified that she had validated the finding against S.K. because S.K. “reported that she actually did take the picture and that it was taken.”
Based upon this evidence, the juvenile court judge declined to order correction of the central registry, stating: “I don’t see a reason for doing it.”
DISCUSSION OF THE APPLICABLE LAW
Louisiana Children’s Code article 616, which provides for the creation of a central registry, appears in Title VI of the Code, governing “Children in Need of Care.” Article 616 states that “[t]he purpose of this central registry, among other uses, is to provide information of past reports of child abuse or neglect of children to assist in the proper evaluation of current reports of abuse or neglect which may include a pattern of incidents.” Article 603, the “Definitions” provision of Title VI, defines “abuse” and “neglect” as follows:
(2) “Abuse” means any one of the following acts which seriously endanger the physical, mental, or emotional health and safety of the child:
(a) The infliction, attempted infliction, or, as a result of inadequate supervision, the allowance of the infliction or attempted infliction of physical or mental injury upon the child by a parent or any other person.
(b) The exploitation or overwork of a child by a parent or any other person, including but not limited to commercial sexual exploitation of the child.
(c) The involvement of the child in any sexual act with a parent or any other person, or the aiding or toleration by the parent, caretaker, or any other person of the child’s involvement in any of the following:
(i) Any sexual act with any other person.
(ii) Pornographic displays.
*1173 (iii) Any sexual activity constituting a crime under the laws of this state.
(d) A coerced abortion conducted upon a child.
* * *
(18) “Neglect” means the refusal or unreasonable failure of a parent or caretaker to supply the child with necessary food, clothing, shelter, care, treatment, or counseling for any injury, illness, or condition of |7the child, as a result of which the child’s physical, mental, or emotional health and safety is substantially threatened or impaired....
Although there is no written documentation in the record, according to the testimony at trial, the validated finding against S.K. was “sexual exploitation, pornography.” The Children’s Code contains no definition of “sexual exploitation” or “pornography.” The Louisiana criminal law, at La. R.S. 14:81.1B (8), defines “[pjornography involving juveniles” as “any photograph, videotape, film, or other reproduction, whether electronic or otherwise, of any sexual performance involving a child under the age of seventeen.” That statute’s definition of “sexual performance” includes “masturbation.” La. R.S. 14:81.1 B (10). Because the Department’s central registry records incidents of abuse or neglect, it follows that a “validated finding” entered into the registry must reference conduct that constitutes abuse or neglect of a child.
On appeal, S.K. argues that her conduct did not constitute abuse, neglect or sexual exploitation of the child in question, and that the photograph she took was not pornography because it showed only a child covered by a blanket and did not depict what the child was doing. We agree that the evidence adduced at trial does not support a finding of abuse, neglect, or sexual exploitation of the child. We also agree that the photograph taken by S.K., as described by her (which no one from the Department ever saw and which is not in evidence), did not constitute pornography.
Article 616.1, pursuant to which this action to correct the central registry was brought, does not address which party has the burden of proof in such an action or what that burden is. We are not aware of any jurisprudence addressing the appropriate burden of proof. At a minimum, however, the Department should | shave to provide sufficient evidence to make out a prima facie case supporting the finding of abuse or neglect that it has validated, before the burden shifts to the individual who is challenging the finding to refute that evidence. In the case before us, the Department introduced no documentary evidence supporting its finding. Moreover, the testimony of Ms. Allen does not support a finding of abuse, neglect or exploitation of the child. Ms. Allen testified that she validated the finding because S.K. admitted to having taken the picture in question. Ms. Allen never saw the photograph. Ms. Allen did not explain why the photograph, as described by S.K., constituted pornography. The record does not reflect that the trial court conducted any analysis to determine whether the photograph was pornography. This case involves a photograph of a young boy covered to his neck by a blanket. In our view, to be pornographic, a photograph must be readily recognizable as such by the person viewing it. As a former United States Supreme Court justice famously remarked about pornography, “I know it when I see it.” Jacobellis v. State of Ohio, 378 U.S. 184, 197, 84 S.Ct. 1676, 1683, 12 L.Ed.2d 793 (1964) (Stewart, J., concurring).
In the absence of any evidence that the photograph taken by S.K. was pornographic, or that her conduct constituted abuse, neglect or exploitation of the child in question, the trial court erred by denying S.K’s motion to correct the central regis *1174 try. Therefore, we reverse the trial court’s judgment and order that the central registry be corrected in accordance with this disposition.
REVERSED AND RENDERED

. No petition was subsequently filed alleging the child to be in need of care.

. Due to the sensitive nature of this matter, initials are used to protect the identity of all involved.

. The record reflects that Ms. Allen used these documents during her testimony; presumably to refresh her memory.

. Ms. Allen could not explain why even after she had confirmed there was no video, she had continued to refer to a video in her report.

. Ms. Allen did not inquire as to the relationship between A.U. and S.K.